20-2184 and 20-3410 Mr. Chabrow, you're on Zoom Yes, good morning, Mr. Chabrow, Mr. Leroux Why don't you proceed? Okay, thank you. Supreme Court has always required sentencing to be in person. There were no exceptions. The CARES Act provided that certain appearances could be done virtually due to the necessity of avoiding personal interactions in courtrooms, but made it very clear that sentencing, which are of paramount importance, can only go forward virtually if a time-concerned sentence was available. In other words, the sentencing should only go forward if the pandemic was preventing someone who was eligible for the time-served sentence, preventing them from being sentenced and being released, in doing so, doing serious harm to their... But wasn't that an option here? In fact, Mr. Leroux was asking for it, was hoping for a time-served sentence. Yes, Your Honor, but hoping for a time-served sentence is not, I don't believe, the standard. The only person who could know whether... But you're suggesting that the trial judge prejudge it and decide in advance, I'm going to do a time-served sentence, when in fact, of course, the trial judge wants to hear, give people a chance to speak, and the mind may not be made up yet. Of course. In this case, Judge Abrams actually stated this is the highest sentence she's ever given to a cooperator. The sentence is 25 years. There was a lot of briefing that happened in the week or two leading up to this where she asked for guidelines and so forth. I think this is the last case that could have gone forward virtually. It was very clear to her. She knew that there was no way he was getting anywhere close to a time-served sentence. I was going to say, what about the waiver issue? He consented to the telephonic proceedings. Sure. It was done video, and there was a consent, but Mr. LaRue is consenting, but he was not told. I believe the waiver is not knowing, if he's not being told, that there's no possibility that he's going to get a time-served sentence. Where does it say in the CARES Act that the waiver, that is that the consent, is conditioned on being told what your sentence is? Not what your sentence is, Your Honor, but what your sentence is likely to be. There was no finding that this was being done in the interest of justice. There was. So Judge Abrams specifically says it's in the interest of justice. It's not in the interest of justice, according to the CARES Act, Your Honor, if it's going forward in a way where he's not eligible for a time-served sentence. The government repeatedly states that there's... that the presiding sentencing judge find that proceeding by video teleconference is in the interest of justice. Is that what you're arguing? I'm arguing that it can only be done in the interest of justice if there's good reason that... The judge found that it was in the interest of justice to go forward. That's an explicit finding. You're saying that that's wrong? Correct. And why? Why is it wrong? Because there is... just because Mr. LaRue was waving, I don't... he was... he should have been told, and that certainly could have been done. Mr. LaRue, there's no possibility of you getting a time-served sentence. The government repeatedly states in their submission that his ability to ask for a time-served sentence is certainly in the interest of justice. CARES Act specifically states that sentencing should only be going forward if a time-served sentence is something that is a reasonable possibility. That is... this is the last case where this was a reasonable possibility. Mr. LaRue's waiver is not knowing if he doesn't know that this is the case. And this is certainly something that could have been put on the record. Was there anything in the record that told him that he would get a time-served sentence? No. Was there anything in the record that told him that he would not get, under any circumstances, a 25-year sentence? No, Your Honor. When I was told...  What is... what is the surprise, other than the surprise that I've seen, when a cooperating witness or some other witness or some defendant gets more time than he or she expects? When Judge Abrams suggested that we go forward virtually, this is one of the first virtual sentences to be done in escalating liability. It was only the second one. It was my assumption, as was everyone, that a time-served sentence was a distinct possibility. Because otherwise, why would Judge Abrams be suggesting that it be going forward with the understanding that the CARES Act provisioned as to sentence? When Mr. LaRue's waiver is not sufficient because it's not knowing that this was not at all a remote possibility, this is something that she knew well in advance. The case had been going on for six years. There had been many adjournments. And doing another one until we could have been doing this in person certainly would not have harmed the interests of justice. I believe the interests of justice are better being harmed in that it is going forward when there is absolutely no possibility remotely of a time-served sentence at all. And that's something that Judge Abrams knew and should have addressed in advance, and that was not... One last thing, though, and I appreciate where we are today, but isn't that something that counsel or the defendant might have said on the record? That is, that I am consenting, but conditionally. That is, I have an expectation. Well, I think we said that in our sentencing submission. That's what we've been asking for. But I don't think... I think either you're going forward or you're not. I don't think you can tell Judge Abrams. Only if you give me a time-served sentence. Why wasn't it in the interest of justice to proceed? As you said, the case had already been pending six years. I mean, at the time, who knew how long this was going to go on? And it was certainly... there was certainly good reason to go forward and not to delay the thing indefinitely. Can we say that's an abuse of discretion? I think that the reason that there is a presumption, we've always valued going forward in person, especially in a sentencing, when it's so important to have the human element and judging someone face-to-face, having these conversations. In a case like this, where Judge Abrams not only knew he wasn't getting a time-served sentence, was considering something that was a lengthy sentence, that this is one of the most important cases to go forward in person, when we're talking about a sentence of such length. Obviously, it was an indefinite delay, but the CARES Act states that only certain cases should be going forward. This is not one of them. Well, I'm sorry. I should disclose that I was the chair of a judicial conference committee who participated in helping to draft this language of the CARES Act. So when you say what you just said about the consent, where in the CARES Act does it say that consent is limited to certain circumstances? The entire idea was to give defendants the ability to consent so that it wasn't within just the authority of the district court to proceed by videoconference. And here – go ahead. No, no, no. I'm sorry, Your Honor. It states specifically there must be specific findings that it cannot be further delayed without doing serious harm to the interests of justice. There were not specific findings. That is the crux of your argument. Okay. So you've reserved three minutes for rebuttal. We'll hear from the government. Mr. Lockhart. May it please the court, Assistant United States Attorney Michael Lockhart for the appellee. I'll just start by picking up on the point, Judge Loyer, that you were making about the CARES Act. The CARES Act sets forth two circumstances that have to be met to authorize a remote sentencing. It does not specifically state anything about the type of sentence that might be imposed or the range of sentences that are available. It simply states that there must be a finding – well, first of all, there must be a national emergency, which was declared. And there must be a finding that in-person proceedings cannot proceed without seriously jeopardizing the public health and safety, which was made here by the Chief Judge, Judge McMahon. And there must be a finding by the sentencing court that further delay cannot be had without serious harm to the interests of justice, which Judge Abrams did, in fact, find. Excuse me. Can I ask a question about that? Yes, Your Honor. This was sort of an unusual two-step sentencing process, and I'm curious. In the first go-round on the sentencing, did Judge Abrams make any such finding? Judge Abrams did make that finding. It's on page, I believe, 211 and 212 of the appendix. 211 and 212, yes. Where Judge Abrams first confirmed with Mr. LaRue that it was his desire to appear by videoconference at the sentencing, confirmed with Mr. LaRue's counsel that it was Mr. LaRue's desire to proceed by videoconference, confirmed with Mr. LaRue's counsel that counsel had discussed remote appearance for sentencing with Mr. LaRue, and Mr. Chabreau described on the record how he had a lengthy conversation with Mr. LaRue about the pros and cons of appearing remotely. And Judge Abrams specifically found that further delay would seriously harm the interests of justice in this case, which I think dovetails with the main point that we raise in our brief, which is that Mr. LaRue is complaining about a remote appearance that he asked the court to hold, which implicates the invited error doctrine, which is a little bit of a misnomer. It's not necessarily invited error. It's an invited decision. Mr. LaRue got exactly what he wanted with respect to remote appearances, which is to appear by videoconference. Mr. LaRue and his counsel also had multiple opportunities to object throughout the course of the sentencing proceedings and intentionally failed to raise any objection, which also implicates the waiver aspect of that doctrine. In fact, he was given three opportunities. Why does the government always talk about invited error as opposed to plain error? Well, I'm about to get to plain error, Your Honor, and I'm happy to do so if you'd like to pivot to that issue. Well, you do what you need to do, Mr. Leckar, but that's a pending question. So let me first just highlight the three opportunities that Mr. LaRue had to object and failed to object, again, going to the waiver issue. First, after having heard from the parties and from Mr. LaRue, Judge Abrams asked if there was any legal reason why a sentence could not be imposed, and both Mr. Chabreau and his co-counsel, Mr. Brandon, said, no, Your Honor, there is no reason. Judge Abrams then announced the sentence that she intended to impose, again asked if there was any legal reason why it could not be imposed, and defense counsel said, no, there was no reason why it could not be imposed. And then at the supplemental sentencing hearing on September 20th, after Judge Abrams announced the corrected aspect of the sentence, asked for the third time if there was any reason why a sentence could not be imposed, and again, defense counsel said, no, there was no reason. So I think those three opportunities amply demonstrate waiver of a known right, which precludes appellate review. So then turning to even if this issue were not waived, and waived for very strategic reasons, I think, as the court noted, Mr. LaRue was seeking a time-served sentence, which is more valuable the sooner it's imposed. His hopes were not realized, but he had a tactical, strategic reason for seeking a remote appearance. What about the suggestion that Judge Abrams must have known that she was not going to impose a time-served sentence, and therefore should have waited? There's no indication of that in the record. Mr. Chabreau has asserted that, but it's not reflected in the record. Judge Abrams did not announce any aspect of the sentence until after having heard from all the parties, reviewed all the submissions, reviewed the pre-sentence report, and having heard from Mr. LaRue personally, as she's required to do. There's nothing in the record suggesting that it was foreclosed, either as a matter of law or in her own mind. And I think it would be inappropriate to infer from the sentence that actually was imposed that anything had been pre-decided by the sentencing judge. Now, even if this objection were not waived, the court's decision in Selim, I think, squarely addresses the plain error issue, which is that even if Mr. LaRue could show error, and as we've argued in our brief, he hasn't, even if he could show that the error was plain, and again, in the absence of binding precedent from this circuit or from the Supreme Court on either of the two issues he raises, he cannot show plain error, he has not shown that the purported error affected his substantial rights. Just as the defendant in Selim, Mr. LaRue, was able to see and hear the judge, the judge was able to see and hear him. There was a breakout room available for him to consult with counsel about any matter that he wished to during the proceedings. He was able to directly address the court. The court was able to see him as he did so, and in addition, this particular sentencing judge had also had an opportunity to observe Mr. LaRue in person at length as he testified as a cooperating witness in a trial over which Judge Abrams presided. The reasons that Mr. LaRue advances as prejudice principally focus on the timing of the sentencing, not the nature of the appearance. The timing of sentencing is governed by the court's broad discretion, as this court has explained in Ray and other cases, and is a different question than whether he was prejudiced by a remote appearance as opposed to an in-person appearance. And everything that defense counsel argues as prejudice from the timing are all things that were well known to defense counsel and to Mr. LaRue in advance of sentencing, and in fact were addressed at length in the sentencing briefs. So why do you ask for, invite us to essentially dismiss because of invited error as opposed to plain error? There are multiple grounds that are available for the court to dispose of this appeal. I think both clearly apply, and if the court finds that both apply, of course, the court could rely on either or both of those grounds, but we do believe both are clearly available. One of the oddities of this is that, as you point out, there are no, not oddity, but one of the unique parts of this is that there is no precedent because, and it's somewhat odd to me that this is the first case where we've had an opportunity at least to grapple with this issue of consent under the CARES Act. Is that correct? As far as I'm aware, yes, Your Honor. And what that means, what the interest of justice analysis entails, these are potentially difficult issues. So I'm a little puzzled as to why you proceed under an invited error analysis. I would think that the government would want something other than that. Well, Your Honor, I think as we did argue in our brief that there was no error at all, I think the court could conclude that this is not an ideal vehicle to address those issues precisely because they were not addressed in the district court, because there was no objection. The district court was not faced with competing arguments, did not have to resolve those arguments, and this court essentially would be working on a clean slate in the absence of any opportunity for the district court to have thoughtfully addressed those questions. So I think it's not an ideal vehicle to address those on an appeal. That's not necessary to address them, both because of the plain error test and the fact that the defendant waived the issue by knowingly failing to preserve his objection below. Thank you very much. Mr. Chabot. Yes, very briefly. Thank you, Your Honor. Just because Judge Abrams said that I'm finding that interests of justice are being served doesn't mean that they weren't. There is no specific finding out of justice. So what about the point that your client asked to be sentenced remotely by videoconference? Isn't this a textbook waiver? Just because he's asking doesn't mean the interests of justice are being served. I think that what's more being served is sort of desperation. Someone who's seeking to get out of jail, I mean, it's temporarily delaying that desperation, but ultimately could be hurting them going forward because it doesn't have an opportunity to be sentenced in person, which is our preferred form of sentencing. And I think that also goes to plain error as how would this have been different? I guess that's something that we would like to see, and that's important. And once again, the government is stating that Judge Abrams couldn't have known that this wouldn't be a time-served sentence going in. Of course she did. Perhaps there's a situation where it could have been a sentence of 24 months or 18 months, and in that regard, it was something that was decided at the time. But this is a sentence of 300 months where she specifically came. This is the longest sentence I've ever given to a cooperator. This is the last case that should go forward. It should be going forward in person. Just because she says that it's being done in the interest of justice doesn't mean that it is. There has to be specific findings on the record. What other specific findings are you suggesting she should have made? That Mr. LaRue would be potentially eligible for a time-served sentence. There would be some other reason as to why sentencing should be going forward. That would somehow be assisting him, when in fact it did not. Just because he's asking for it, because he's acting from a point of desperation, is not someone who is savvy enough to understand. Just because he has the ability to ask is not serving the interest of justice. That's not what the CARES Act said. It has to be something that is a reasonable possibility. And when she knew it was not, she should have corrected him or at least informed him of the possibility in order for his waiver to be at all known. In the second round, the court not only made the finding, the sort of boilerplate statement, but it provided the rationale that he sought a time-served sentence and that now he wants an opportunity to promptly appeal it. Even if the court wasn't inclined to give a time-served sentence, he doesn't get his opportunity to seek the intervention of the appellate court until he's been sentenced. Isn't that an adequate finding to support the assertion of interest of justice? I understand, Your Honor. I think at that point the damage had already been done, so to speak. Also as to what Mr. Lockhart said about we had an opportunity to raise an objection. Once the sentence has already been said, and this was somewhat of a lengthy procedure, we can't just say, oh, Your Honor, I'm sorry, we'd like to start over. And I think that that also applies to the second appearance, that at that point the damage has already been done, the judge has already stated what she's going to do and we can't put the toothpaste back in the tube, so to speak, and that an objection at that point, that would have made a difference. So to agree to do a CARES Act sentencing remotely by video, a court has to have already concluded that it is going to sentence the defendant to time served. Is that essentially the rule of law you're advocating? I think, Your Honor, that it at least has to be some sort of possibility. I don't think every sentence has to be time served, but there are certain sentences where the judge, as Mr. Lockhart said, has not made up their minds until they're present, until they hear from the parties, that this is not one of those cases. And how do we know that? How do we know that the court, that it wasn't a possibility at the outset of the hearing? I think if you look at the transcript, what was prepared, there was quite a bit of preparation. There was a lot of briefing that went on. Mr. LaRue got 300 months. And once again, the judge stated, this is the longest sentence I've ever given to a cooperator. He obviously looked into that beforehand to realize that. I don't think that that's something that she's coming up with off the top of her head. This is obviously something that had been very, very well prepared. If it was a sentence of five years, ten years, I would assume considering he'd already served some time, perhaps we could say that you don't know what would happen until we got there. There had been a lot of briefing in the weeks leading up to this about a lot of specific issues. She asked as to what the guidelines were. There was a whole bunch of briefing on the leaks by the DEA in this case. And so there was so much information going back and forth leading up to this, I think that Judge Abrams was well prepared as to what was going to happen, and I think she had a very good idea as to what she was going to do. Is it possible she maybe could have gone a little bit lower or maybe even a little bit higher? Sure. Is there any possibility of time served? Absolutely not. I think that's very, very clear here. Okay. Thank you very much. We'll reserve the decision. Thank you. We'll hear argument next.